1
2
3
4
5
6
7
8

### UNITED STATES DISTRICT COURT

9

### SOUTHERN DISTRICT OF CALIFORNIA

10
11

In re PETCO CORPORATION
SECURITIES LITIGATION,

12

_____

13
14
15

This Document Relates To:

16

ALL ACTIONS

17

CASE NO. 05-CV-0823 H (RBB)

**ORDER FINALLY APPROVING
CLASS ACTION SETTLEMENT
AND PLAN OF ALLOCATION
OF SETTLEMENT PROCEEDS
AND GRANTING LEAD
PLAINTIFF'S COUNSEL'S
MOTION FOR AN AWARD OF
ATTORNEY FEES AND
EXPENSES**

18       Presently before the Court is a motion for final approval of the proposed settlement in

19   this class action, as well as a motion by Lead Plaintiff's counsel for approval of an award of

20   attorney fees and expenses.  (Doc. Nos. 394, 395.)  On September 2, 2008, the Court held a

21   hearing on the motions.  Keith Park and Daniel S. Drosman appeared on behalf of Plaintiffs.

22   Peter H. Benzian and Michael Weaver represented Defendants.

23       For the following reasons, the Court finally approves the parties' proposed settlement,

24   and approves an award to Lead Plaintiff's counsel of attorney fees in the amount of

25   $5,062,500, plus reimbursement of expenses in the amount of $2,023,462.23.

26                                    **Background**

27       On August 17, 2005, the Court consolidated four securities lawsuits instituted on

28   behalf of the stockholders of PETCO Animal Supplies, Inc. ("PETCO"), into this class

action.  (Doc. No. 12.)  On October 17, 2005, lead plaintiff Plumbers and Pipefitters Local 51 Pension Fund ("Plaintiffs") filed a consolidated complaint for violations of the federal securities laws.  (Doc. No. 16.)   On April 19, 2007, the Court certified a plaintiff class defined as "[a]ll persons who purchased or otherwise acquired the common stock of PETCO Animal Supplies, Inc. during the period from November 18, 2004 through April 15, 2005, inclusive (the "Class"), excluding the defendants herein, members of the immediate family of the defendants, any entity in which any defendant has a controlling interest and the legal affiliates, representatives, heirs, controlling persons, successors and predecessors in interest or assigns of any such excluded party."  (See Doc. No. 115.)

On April 29, 2008, the Court issued an order granting in part and denying in part Defendants' motions for summary judgment.  (Doc. No. 368.)  The Court granted preliminary approval of the proposed class action settlement and approved procedures for providing notice to the class of the proposed settlement, following a hearing.  (Doc. No. 393.)

In accordance with the Court's preliminary approval order, the Claims Administrator has mailed copies of the Notice of Proposed Settlement of Class Action to the over 18,000 members of the Plaintiff class.  (See Decl. of Carole K. Sylvester ¶¶ 3-8.)  The notice described the terms of the proposed settlement for $20.25 million in cash, the allocation plan which will determine each qualifying class member's share of the net settlement fund, and Lead Plaintiff's counsel's request for attorney fees in the amount of 25% of the settlement fund, plus expenses not to exceed $2.2 million.  (Id.)  The Court set August 15, 2008 as the deadline for class members to file and serve any objections to the proposed settlement.  (Prelim. Approval Order ¶ 11.)  No class member has filed objections to the settlement.  (See Supp. Mem. ISO Motion for Final Approval, Doc. No. 395.)

After due consideration of the evidence and arguments presented to the Court in the parties' moving papers as well as the hearing held on September 2, 2008, the Court concludes that good cause exists to finally approve the proposed settlement.  Additionally, as discussed below, the Court grants Lead Plaintiff's counsel's motion for an order

1   approving an award of attorney fees in the amount of $5,062,500, plus expenses in the

2   amount of $2,023,462.23.

3                                    **Discussion**

4   **I.      Approval of Proposed Settlement – Legal Standards**

5           Rule 23(e) of the Federal Rules of Civil Procedure provides that "[t]he court must

6   approve any settlement, voluntary dismissal, or compromise of the claims, issues or

7   defenses of a certified class." Fed. R. Civ. P. 23(e)(1)(A). The Rule further states, "[t]he

8   court may approve a settlement, voluntary dismissal, or compromise that would bind class

9   members only after a hearing and on finding that the settlement, voluntary dismissal, or

10  compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C); see Class

11  Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). In evaluating a

12  settlement, the court must balance "several factors which may include, among others, some

13  or all of the following: the strength of the plaintiffs' case; the risk, expense, complexity,

14  and likely duration of further litigation; the risk of maintaining class action status

15  throughout the trial; the amount offered in settlement; the extent of discovery completed,

16  and the stage of the proceedings; the experience and views of counsel; the presence of a

17  governmental participant; and the reaction of the class members to the proposed

18  settlement." Officers for Justice v. Civil Serv. Comm'n., 688 F.2d 615, 625 (9th Cir.

19  1982). "The relative degree of importance to be attached to any particular factor will

20  depend upon and be dictated by the nature of the claims advanced, the types of relief

21  sought, and the unique facts and circumstances presented by each individual case." Id.

22          Here, the Court concludes that the proposed settlement considered as a whole is fair,

23  adequate and reasonable. First, the settlement is the product of extensive arms-length

24  negotiations facilitated by the magistrate judge assigned to this case, who possesses a

25  detailed understanding of the case and the parties' respective strengths and weaknesses. In

26  addition to the assistance of the magistrate judge, the parties participated in multiple

27  mediation sessions before retired judges. (See Decl. of Daniel S. Drosman ISO Motion for

28  Final Approval ("Drosman Decl.") ¶¶ 139-145.)

1    Second, the Court concludes that the stage of litigation at which the proposed

2    settlement was reached supports its approval by the Court.  See Officers for Justice v. Civil

3    Serv. Comm'n., 688 F.2d at 625.  This case has been vigorously litigated for over three

4    years, and the agreement to settle occurred shortly before trial.  (See Drosman Decl. ¶ 145.)

5    By that time, Lead Plaintiff's counsel had conducted detailed interviews of witnesses

6    including former PETCO employees, obtained class certification, reviewed more than 7

7    million pages of documents and conducted or participated in more than 40 depositions,

8    litigated numerous discovery motions and completed expert discovery, and extensively

9    prepared for trial including the preparation of a memorandum of contentions of fact and

10   law, a joint pretrial order and exhibit lists.  (See Drosman Decl.)  The litigation and

11   discovery conducted prior to that point enabled counsel for both sides to achieve a

12   comprehensive understanding of the merits and potential weaknesses of each party's claims

13   and defenses, as well as the risks and delays involved in proceeding to trial and potential

14   appellate litigation.  (See Drosman Decl. ¶ 145.)  Additionally, after the parties agreed in

15   principle to a settlement, extensive arms-length negotiations occurred regarding the terms

16   of the settlement, see Drosman Decl. ¶ 149, further supporting the conclusion that the

17   proposed settlement was "not the product of fraud or overreaching by, or collusion

18   between, the negotiating parties."  Officers for Justice, 688 F.2d at 625.

19   Next, the Court concludes that the amount of the proposed settlement supports its

20   approval at this time.  Officers for Justice v. Civil Serv. Comm'n., 688 F.2d at 625.

21   Particularly in light of the uncertainty and problems of proof involved in this complex case

22   involving competing expert testimony, the Court concludes that the amount offered in the

23   proposed settlement is fair, adequate and reasonable to the members of the class.  Id.  The

24   amount of the proposed settlement represents approximately 40% of the damages that Lead

25   Plaintiff's expert believed could be recovered at trial, and significantly exceeded the

26   amount of damages that Defendants' experts believed could be established.  (See Drosman

27   Decl. ¶ 149; see also Decl. of Scott D. Hakala, Ph.D., CFA, In Supp. of Motion for Final

28   Approval.)

1    Finally, the Court concludes that the class members' reaction to the proposed

2  settlement has been favorable and further supports granting final approval at this time.  See

3  Officers for Justice v. Civil Serv. Comm'n., 688 F.2d at 625.  In addition to the factors

4  discussed above, the fact that no member of the class has objected to the terms of the

5  proposed settlement is entitled to significant weight in the Court's determination that the

6  proposed settlement is fair, adequate and reasonable.  See id.  Based on all the evidence

7  before the Court, the Court concludes that the proposed plan of allocation constitutes a fair

8  and reasonable method of allocating the net settlement fund to the members of the Plaintiff

9  class.

10  **II.    Attorney Fees and Reimbursement of Expenses**

11    Also before the Court is Lead Plaintiff's counsel's motion for approval of the

12  payment of attorney fees and reimbursement of expenses to counsel.  (Doc. No. 394.)

13  Counsel requests an award of attorney fees in the amount of 25% of the settlement fund, as

14  well as litigation expenses in the amount of $2,023,462.23.

15    In a class action the court upon motion "may award reasonable attorney fees and

16  nontaxable costs authorized by law or by agreement of the parties."  Fed. R. Civ. P. 23(h).

17  In "common fund" cases such as this one, the Ninth Circuit has stated that the district court

18  has discretion to use either a percentage or "lodestar" method to determine what constitutes

19  a reasonable fee.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re

20  Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").

21  As discussed below, the Court concludes that the fee requested in this case is reasonable

22  under either method.

23    When using the percentage method, the court "awards the attorneys a percentage of

24  the fund sufficient to provide class counsel with a reasonable fee."  Hanlon, 150 F.3d at

25  1029.  The Ninth Circuit has established 25% of the common fund as a "benchmark" for

26  what constitutes a reasonable fee.  Id.; see Six Mexican Workers v. Arizona Citrus

27  Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  The percentage can be adjusted based on

28  the circumstances of a particular case.  Paul, Johnson, Alston & Hunt v. Gaulty, 886 F.2d

1  268, 272 (9th Cir. 1989).

2  Here, the Court concludes that the amount sought by Lead Plaintiff's counsel is

3  reasonable  and appropriate under all the circumstances of this case.  First, the requested

4  award is consistent with the 25% benchmark established by the Ninth Circuit.  See Six

5  Mexican Workers v. Arizona Citrus Growers, 904 F.2d at 1311.  Second, the Court

6  concludes that the requested fee award is reasonable in light of the favorable result obtained

7  for class members by Lead Plaintiff's counsel.  See Hensley v.  Eckerhart, 461 U.S. 424,

8  436 (1983) ("most critical factor is the degree of success obtained").  Here, the efforts of

9  counsel resulted in a cash recovery of $20.25 million, which is a substantial benefit for the

10  members of the class, particularly measured against the parties' different estimates of

11  recoverable damages.  The Court is familiar with the entire history of this case and notes

12  that Lead Plaintiff's counsel achieved the settlement result only after three years of

13  contentious litigation regarding difficult legal and factual questions.

14  Next, the Court notes that for the duration of this case Lead Plaintiff's counsel faced

15  significant risks and uncertainties regarding whether a favorable result could be obtained.

16  Although Lead Plaintiff's counsel succeeded in surviving (at least in part) Defendants'

17  challenges to the pleadings and motions for summary judgment, proceeding to trial would

18  have involved substantial uncertainty.  Even if Lead Plaintiff succeeded in proving

19  Defendants' liability, numerous legal and factual uncertainties could have resulted in a

20  recovery (if any) of much less than the settlement amount, and appellate litigation would

21  have brought additional risk, delay and uncertainty.  As the Ninth Circuit has recognized,

22  the risk faced by counsel is an important factor to consider when determining a reasonable

23  fee amount.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002);

24  WPPSS, 19 F.3d at 1299-1301.  Additionally, the contingent nature of the fee involved

25  substantial risk for Lead Plaintiff's counsel.  Here, considering the entire circumstances of

26  this litigation, the Court concludes that the risk involved supports a fee award of 25% of the

27  settlement fund.  Additionally, the Court concludes that the quality of work performed by

28  Lead Plaintiff's counsel supports an award of 25% of the settlement amount.  The Court

1   also concludes that 25% is consistent with (and, in many cases, lower than) the fees

2   awarded in comparable cases in this district and others, as documented in Appendix A to

3   Lead Plaintiff's counsel's motion for an award of attorney fees.  See Vizcaino v. Microsoft

4   Corp., 290 F.3d at 1050 n. 4.   In sum, the Court concludes that 25% of the settlement fund

5   constitutes a reasonable fee amount under all the circumstances of this case.

6          The Court also concludes that the fee award is reasonable when evaluated using the

7   lodestar method.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998); In re

8   Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").

9   As documented in the declaration of Keith F. Park filed in support of Lead Plaintiff's

10  counsel's request for an award of attorney fees, lead counsel and their experts, investigators

11  and other professionals have expended nearly 20,000 hours over the more than three year

12  duration of this litigation, with a resulting lodestar of $8,305,961.  The requested fee

13  amount $5,062,500 represents a negative multiplier (i.e., a 39% discount) of the lodestar.

14  The Court concludes that this confirms the reasonableness of the requested fee amount,

15  particularly since courts in the Ninth Circuit generally consider positive multipliers of 2.0

16  through 4.0 to be reasonable.  See Vizcaino v. Microsoft Corp., 290 F.3d at 1051.

17  Accordingly, the Court concludes that when evaluated using the lodestar method, the

18  requested award is reasonable and appropriate under all the circumstances of this case.

19         The Court also approves the reimbursement of litigation expenses incurred by Lead

20  Plaintiff's counsel, in the amount of $2,023,462.23.  (See Decl. of Keith F. Park ISO App.

21  for Award of Atty. Fees & Exp's ¶ 5.)  The Court concludes that the expenses – which

22  include experts, consultants and investigators; mediation fees; travel costs; court reporting

23  and deposition costs; and legal research, as detailed and itemized in the declaration of Keith

24  F. Park, the Drosman Declaration, and the declarations of D. Paul Regan, Frank Partnoy

25  and Scott D. Hakala – are compensable in common fund cases such as this one, since they

26  are the type of costs typically billed by attorneys to fee paying clients in the marketplace.

27  See Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994).  The Court has reviewed the

28  submissions by Lead Plaintiff's counsel and concludes that the categories of expenses for

which counsel seeks reimbursement are the type of expenses routinely charged to hourly fee paying clients, are reasonable in amount, and were necessarily incurred in achieving the result for the class members.  Accordingly, the Court concludes that Lead Plaintiff's counsel is entitled to reimbursement of expenses in the amount of $2,023,462.23, and the Court approves the payment of that amount out of the common settlement fund of $20.25 million.

## Conclusion

In light of the foregoing, the Court ORDERS as follows:

1.      Terms used in this Order have the same meanings as set forth in the Stipulation of Settlement dated as of June 5, 2008 (the "Stipulation").

2.      This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Members of the Class.

3.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court approves the settlement set forth in the Stipulation and concludes that said settlement is, in all respects, fair, just, reasonable and adequate to the Class.

4.      The Court concludes that the Stipulation and settlement are fair, just, reasonable and adequate as to each of the Members of the Class.  Accordingly, the Stipulation and settlement are finally approved in all respects, and the Settling Parties are directed to perform its terms.

5.      The Court concludes that the Notice of Proposed Settlement of Class Action given to the Class was the best notice practicable under the circumstances, including the individual notice to all Members of the Class who could be identified through reasonable effort.  Said notice constituted the best notice practicable under the circumstances of those proceedings, including the proposed settlement set forth in the Stipulation, to all Persons entitled to such notice, and the Court concludes that said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act of 1995, and due process.

6.      Neither the Stipulation nor the settlement, nor any act performed or document

executed pursuant to or in furtherance of the Stipulation or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants or their respective Related Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or their respective Related Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Defendants and/or their respective Related Parties may file the Stipulation and/or the Judgment in this matter in any other action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.      Without affecting the finality of the Judgment in this case, this Court retains continuing jurisdiction over: (a) implementation of this settlement and any award or distribution of the Settlement Fund, including interest earned; (b) disposition of the Settlement Fund; (c) hearing and determining applications for attorney fees, interest and expenses in the Litigation; and (d) all parties hereto for the purpose of construing, enforcing and administering the Stipulation.

8.      The Court concludes that during the course of the Litigation, the Settling parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

9.      Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court concludes that due and adequate notice was directed to all Persons who are Class Members advising them of the Plan of Allocation and of their right to object, and a full and fair opportunity was accorded to all Persons who are Class Members to be heard with respect to the Plan of Allocation.  There were no objections to the Plan of Allocation.

10.      The Court concludes that the formula for the calculation of the claims of Authorized Claimants, which is set forth in the Notice of Proposed Settlement of Class Action (the "Notice") sent to Class Members, provides a fair and reasonable basis upon

05cv823

which to allocate the proceeds of the Net Settlement Fund established by the Stipulation among Class Members, with consideration having been given to administrative convenience and necessity.

11.    The Court concludes that the Plan of Allocation set forth in the Notice is in all respects fair and reasonable and the Court approves the Plan of Allocation.

12.    The Court awards Plaintiff's Lead Counsel attorney fees of 25% of the Settlement Fund, as well as expenses in an aggregate amount of $2,023,462.23, together with the interest earned for the same time period and at the same rate as that earned on the Settlement Fund until paid.  The fees are to be allocated by Plaintiff's Lead Counsel in a manner which, in their good faith judgment, reflects each counsel's contribution to the institution, prosecution and resolution of the Litigation.  The Court concludes that the amount of fees awarded is fair and reasonable under the "percentage of recovery" method, and further that the amount of fees awarded is reasonable when cross-checked using the "lodestar" method.

13.    The awarded attorney fees and expenses, and interest earned, are to be paid to Plaintiff's Lead Counsel from the Settlement Fund after the date this Order is executed subject to the terms, conditions and obligations of the Stipulation and in particular ¶ 6.2.

14.    Judgment is entered dismissing the Litigation with prejudice, on the merits, and without taxation of costs in favor of or against any party.

IT IS SO ORDERED.

DATED:  September 2, 2008

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT